# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

| | |
|---|---|
| **GULF COAST BANK AND TRUST COMPANY** | **PLAINTIFF** |
| V. | CIVIL ACTION NO. 2:11-CV-88-KS-MTP |
| **SAM WILLIAM STINSON** | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants** Plaintiff's Motion for Summary Judgment [43]. The Court finds that Defendant, Sam William Stinson, is personally liable for $2,789,775.00 of damages to Plaintiff, Gulf Coast Bank and Trust Company, caused by his actions as Vice President of Stinson Petroleum Company.

## I. INTRODUCTION[1]

Stinson Petroleum Company ("Stinson Petroleum") sold gasoline to convenience stores and other businesses. In 2005, Stinson Petroleum entered into the first of multiple "Receivables Purchase Agreements" ("RPA's") with Plaintiff, pursuant to which Stinson Petroleum would assign all of its accounts receivable to Plaintiff in exchange for the advancement of funds up to 85% of the value of the accounts receivable, but no more than an upper limit of $7,000,000.00. Stinson Petroleum was required to collect on the accounts and remit the funds to Plaintiff to repay the loans. Stinson Petroleum also represented in the RPA that the accounts assigned to Plaintiff

---

[1]The facts of this case are undisputed, as Plaintiff failed to present any evidence in support of his response to Plaintiff's motion for summary judgment.

were "bona fide existing obligations created by the sale and delivery of goods or the rendition of services in the ordinary course of Stinson Petroleum's business," and that they were "unconditionally owed and will be paid to [Plaintiff] without defense, disputes, offsets, counterclaims, or rights of return or cancellation."

During the term of each RPA, Stinson Petroleum – through Defendant, its Vice President – sent Plaintiff a monthly statement of the accounts receivable assigned to Plaintiff. The statements reported the current account balance for each Stinson Petroleum customer and certain payment history information. These statements determined the amount of credit available to Stinson Petroleum. Each one included the following representation, signed by Defendant: "The undersigned, for value received, hereby sells, assigns, transfers and sets over to Gulf Coast Business Credit, all invoices, in accordance with the terms and conditions recited in certain Receivables Agreement executed by the undersigned with Gulf Coast Business Credit. Further that all materials have been delivered and all services performed as represented on the above listed invoices, and that there are no existing offsets."

On August 4, 2009, Stinson Petroleum filed a Voluntary Petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Mississippi. The Bankruptcy Court appointed a neutral third party analyst to review Stinson Petroleum's financial information and identify payments made to Plaintiff by Stinson Petroleum from pre-petition receivables collected after the petition had been filed. On August 20 and 31, 2009, Defendant presented the analyst, Gary Aldridge, with accounts receivable reports, representing that they were Stinson Petroleum's

2

then-current accounts receivable. Aldridge's analysis of the accounts revealed that the monthly statements sent to Plaintiff had higher accounts receivable balances than the monthly statements Defendant provided him pursuant to the Bankruptcy Court's order.

On December 16, 2009, the Bankruptcy Court converted Stinson Petroleum's Chapter 11 case into a Chapter 7 liquidation. Stinson Petroleum then provided the Trustee with copies of its monthly accounts receivable reports for the year prior to the filing of their petition. These reports – like the ones provided to Aldridge – revealed lower accounts receivable balances than the monthly statements that had been provided to Plaintiff pursuant to the RPA.

Over a six-month period, from January 2009 to June 2009, Stinson Petroleum had overstated its new accounts receivable by $27,343,521.74. As a result of these misrepresentations, Plaintiff advanced $5,617,759.85 to Stinson Petroleum that it would not have advanced if the monthly statements were accurate. The final monthly statement submitted to Plaintiff on July 27, 2009, included a representation that Stinson Petroleum's accounts receivable totaled $7,746,472.00. Based on this figure, the total funds available were represented to be $5,937,687.00 – approximately 76.65% of the total reported accounts receivable. The actual accounts receivable was $4,106,864.00. Assuming the same proportion of available funds, the overstatement of accounts receivable in the final monthly statement resulted in an advancement of $2,789,775.00 under the RPA that would not have been advanced if the monthly statement were accurate. On November 30, 2009, Plaintiff filed a proof of claim in the

bankruptcy proceeding, reflecting an outstanding balance of $4,283,815.00 under the RPA.

In the present action, Plaintiff asserted claims of fraud and negligent misrepresentation against Defendant, Sam William Stinson. At all relevant times, Defendant was the Vice President of Stinson Petroleum. Plaintiff requests actual damages in the amount of $2,789,775.00. The Court now considers Plaintiff's Motion for Summary Judgment [43].

## II. DISCUSSION

Rule 56 allows a party to "move for summary judgment, identifying each claim . . . on which summary judgment is sought. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," and "the mere existence of a scintilla of evidence" is likewise insufficient. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding

4

whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## A. Fraud

To establish a claim of fraud, Plaintiff must establish the following elements by clear and convincing evidence: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Hobbs Auto., Inc. v. Dorsey*, 914 So. 2d 148, 152 (Miss. 2005); *see also Trim v. Trim*, 33 So. 3d 471, 478 (Miss. 2010).

### 1. A Representation

Defendant, in his role as an officer of Stinson Petroleum, submitted the monthly accounts receivable statements described above [43-4, 43-5]. According to the RPA, the accounts receivable were "bona fide existing obligations created by the sale and delivery of goods or the rendition of services in the ordinary course of Stinson Peteroleum's business," and that they were "unconditionally owed and will be paid to [Plaintiff] without defense, disputes, offsets, counterclaims, or rights of return or cancellation." Defendant signed the monthly accounts receivable statements

5

themselves, representing that the statements were "[i]n accordance with the terms and conditions" of the RPA's, and that "all materials [had] been delivered and all services performed as represented" therein. Accordingly, Plaintiff has provided undisputed, clear and convincing evidence that Defendant made certain representations on behalf of Stinson Petroleum.

    2.    *Falsity*

Gary Aldridge, a neutral third party analyst appointed by the Bankruptcy Court, testified [43-10] that Defendant gave him a set of accounts receivable reports [43-11] and told him he "needed to use" them for his report to the Bankruptcy Court. After investigation, Aldridge discovered that Stinson Petroleum's actual accounts receivable were significantly less than what Defendant had represented them to be in the monthly statements submitted to Plaintiff [43-4, 43-5]. Accordingly, Plaintiff has provided undisputed, clear and convincing evidence that the monthly accounts receivable statements submitted to it by Defendant were false.

    3.    *Materiality*

The RPA [43-2] provided that the maximum amount of advances shall be $7,000,000.00 or 85% of the total assigned accounts receivable. Plaintiff also presented an affidavit [43-3] from Wade Hladky, Senior Vice President of Plaintiff, which provides the same. Therefore, the amount of Stinson Petroleum's accounts receivable determined the amount of funds Plaintiff would advance under the RPA. Accordingly, Plaintiff has provided undisputed, clear and convincing evidence that the monthly accounts receivable statements submitted to it by Defendant were material.

6

*4. The Speaker's Knowledge*

Aldridge testified [43-10] that during a meeting with the unsecured creditors' committee during Stinson Petroleum's bankruptcy proceeding, he asked Defendant why there was a discrepancy between the accounts receivable balances submitted to him and the ones submitted to Plaintiff. According to Aldridge, Defendant replied that "those numbers that he submitted really didn't mean anything. They were numbers that he put on there in order to get the loan funds he needed to keep the business going." During his deposition in this case [43-1], Defendant denied that he made this statement. However, he acknowledged that he had previously testified under oath – in a previous lawsuit stemming from the same events – that he did, in fact, admit that the numbers on the monthly accounts receivable statements were meaningless, that they were just a means of getting money from Plaintiff.

Defendant provided no explanation for his inconsistent testimony, and he avoided further questioning on the matter by asserting his Fifth Amendment right to be free from self-incrimination. Regardless, a party may not create a genuine dispute of material fact by contradicting his own prior testimony. *Holtzclaw v. DSC Communs. Corp.*, 255 F.3d 254, 259 (5th Cir. 2001); *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). Therefore, the Court shall disregard Defendant's denial that he admitted having submitted false monthly statements to Plaintiff in order to obtain financing.

Indeed, Defendant declined to answer a substantial number of the questions submitted to him during his deposition, citing his Fifth Amendment rights. Among

7

them was an inquiry as to whether he knew that the information contained in the monthly statements was false. The Court may – and shall – draw an adverse inference from a party's assertion of the Fifth Amendment right to be free from self-incrimination. *Gutterman*, 896 F.2d at 119.[2] This inference, when combined with Aldridge's testimony, leads to the conclusion that Plaintiff has presented undisputed, clear and convincing evidence that Defendant knew that the figures he provided to Plaintiff in the monthly statements were false.

5.  *The Speaker's Intent*

As noted above, Aldridge testified that Defendant admitted that he provided inflated figures so that he could obtain more funds.[3] When asked whether he intended for Plaintiff to act upon the information contained in the monthly statements, he asserted his Fifth Amendment rights. The Court will draw an adverse inference from his refusal to answer the question. *See Gutterman*, 896 F.2d at 119. This inference, when combined with Aldridge's testimony, leads to the conclusion that Plaintiff presented undisputed, clear and convincing evidence that Defendant intended for Plaintiff to act upon the monthly statements by advancing additional funds.

---

[2]The value of such an inference is limited, though, as "a party seeking summary judgment can not rest solely on the other party's exercise of her fifth amendment rights." *Id.* at 119 n. 3. But Plaintiff presented independent evidence in support of its motion. Therefore, granting summary judgment in this case would not "unduly penalize the employment of the" Fifth Amendment privilege. *Id.*

[3]Again, Defendant now denies having made such an admission, despite his previous testimony to the contrary. The Court will disregard his denial. *See Holtzclaw*, 255 F.3d at 259; *Doe*, 220 F.3d at 386.

*6. The Hearer's Ignorance*

Wade Hladky, Senior Vice President of Plaintiff, testified by affidavit that Plaintiff was unaware that the representations contained in Stinson Petroleum's monthly accounts receivable statements were false. Defendant has not presented any evidence to dispute this testimony. Therefore, the Court concludes that Plaintiff presented clear and convincing evidence that it was ignorant of the falsity of the figures provided by Defendant in the monthly statements.

*7. The Hearer's Reliance*

Hladky also testified that Plaintiff relied upon the representations provided in the monthly statements. Defendant has not presented any evidence to contradict this testimony. Therefore, the Court concludes that Plaintiff presented clear and convincing evidence that Plaintiff relied upon the misrepresentations in the monthly statements submitted by Defendant.

*8. The Hearer's Right to Rely*

The RPA [1-1] required Stinson Petroleum to submit monthly financial statements detailing the company's receivables during that time period. The amount of financing extended to Stinson Petroleum depended upon the amount of the receivables assigned to it under the RPA. Accordingly, the Court finds that Plaintiff presented clear and convincing evidence that it had a right to rely on the financial statements.[4]

---

[4]Defendant argues that Plaintiff allowed Stinson Petroleum to operate outside the guidelines of the RPA, disregarding the integrity of their own lending

9. *Consequent and Proximate Injury*

Wade Hladky testified that Plaintiff "has not received repayment of $4,139,566.60 in advances made based upon misrepresentations of the qualified accounts receivables submitted by Sam Stinson," due to Stinson Petroleum's bankruptcy. Plaintiff also presented expert testimony from H. Kenneth Lefoldt, Jr., a certified public accountant. Lefoldt provided the following analysis:

> [T]he last Statement of Accounts Receivable was submitted to Gulf Coast Bank on July 27, 2009, just prior to Stinson Petroleum filing bankruptcy on August 4, 2009. On the certificate submitted on July 27, 2009, the total availability to Stinson Petroleum was represented to be $5,937,687 based on total accounts receivable of just $7,746,472. The availability represented 76.65% of the total accounts receivable reported. The actual accounts receivable was $4,106,864. Since there is not a certificate calculating the availability to Stinson Petroleum for accounts receivable of $4,106,864, I have assumed Stinson Petroleum would have a similar availability of 76.65% or $3,147,912. Due to the overstatement of accounts receivable, Stinson Petroleum had $2,789,775 in additional funds under the Receivables Purchase Agreement.

Lefoldt concluded: "As a result of Sam Stinson materially misrepresenting the monthly accounts receivable balance, Stinson Petroleum had drawn down approximately $2,789,775 in availability to which they were not entitled."

Accordingly, the Court concludes that Plaintiff presented undisputed, clear and convincing evidence that Defendant's misrepresentations proximately caused it to suffer damages in the amount of $2,789,775.00.

10. *Corporate Officer Liability*

---

process. However, Defendant has not provided any evidence in support of this argument.

10

Defendant argues that he should not be personally liable. He claims that he never signed any note, loan documents, or personal guaranty related to the subject debt. However, "[w]hen a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of a corporation, he may be held personally liable." *Whitaker v. Limeco Corp.*, 32 So. 3d 429, 439 (Miss. 2010).

Plaintiff offered abundant, undisputed evidence that Defendant directly participated in or authorized the fraud described above. Aldridge testified that Defendant admitted having falsified the receivables in order to obtain additional financing. Defendant also signed each monthly receivables statement, including a representation that the statement conformed to the RPA's requirement that the assigned receivables be "bona fide existing obligations" which were due and owing to Stinson Petroleum. Furthermore, during Defendant's deposition, he asserted his Fifth Amendment rights every time that Plaintiff's counsel asked a question pertaining to his personal involvement in these events. For example, he declined to answer questions related to 1) whether he had personal knowledge of the information contained in the statements, 2) whether he entered the pertinent information into Stinson Petroleum's computer system for the purpose of creating the monthly statements, 3) whether he oversaw and directed the gathering of the information that was used in the generation of the monthly statements, and 4) whether he knew that the monthly statements contained misrepresentations. The Court will draw an adverse inference from Defendant's refusal to answer these questions. *See Gutterman*, 896 F.2d at 119.

For all of these reasons, the Court finds that Defendant may be held personally

liable for the fraudulent misrepresentations contained in the monthly statements which he submitted to Plaintiff on behalf of Stinson Petroleum.[5]

*11. Summary*

For all of the reasons stated above, the Court finds that Plaintiff presented undisputed, clear and convincing evidence that Stinson Petroleum fraudulently misrepresented the amount of its accounts receivable to obtain additional financing from Plaintiff. Defendant directly participated in and/or authorized these actions, which proximately caused Plaintiff to suffer $2,789,775.00 in damages. Accordingly, the Court grants Plaintiff's motion for summary judgment on its fraud claim.

## B. *Negligent Misrepresentation*

To establish a claim of negligent misrepresentation, Plaintiff must prove the following elements by a preponderance of the evidence:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Holland v. Peoples Bank & Trust Co.*, 3 So. 3d 94, 101 (Miss. 2008).

---

[5]In briefing, Defendant claims that Plaintiff's principal officers's sole motivation in pursuing this litigation is to financially ruin him. However, as demonstrated above, Plaintiff has presented undisputed, clear and convincing evidence that Stinson Petroleum fraudulently misrepresented the amount of its receivables in an effort to gain further financing from Plaintiff. Defendant directly participated in and/or authorized these actions. Therefore, Defendant may be held personally liable for them, and Plaintiff's motives in seeking a judgment against him are irrelevant.

All of the evidence described above is sufficient to demonstrate that Plaintiff has proven the elements of negligent misrepresentation by a preponderance of the evidence, and that Defendant may be held personally liable for his actions as the Vice President of Stinson Petroleum. Therefore, the Court grants Plaintiff's motion for summary judgment as to its negligent misrepresentation claim.

### III. CONCLUSION

For the reasons stated above, the Court **grants** Plaintiff's Motion for Summary Judgment [43]. The Court finds that Defendant, Sam William Stinson, is personally liable for $2,789,775.00 of damages to Plaintiff, Gulf Coast Bank and Trust Company, caused by his actions as Vice President of Stinson Petroleum Company. The Court will enter a separate final judgment in accordance with Rule 58.

SO ORDERED AND ADJUDGED on this the 2nd day of January, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE